The first case scheduled for argument this morning is numbers 21-826 and 21-827, International Code Council v. Upcodes. Mr. Fee, please proceed. Good morning. May it please the Court, Kevin Fee on behalf of International Code Council, Inc. The heart of Upcodes' advertising campaign was a promise to engineers— Excuse me. As a preliminary matter, can you tell me whether this is on a motion to dismiss or kind of the three-page type of motion to dismiss? I mean, where are we on that with respect to what's before us? Sure, Your Honor. The district court has individual procedures that provide for a pre-motion letter process whereby the potential movement submits a three-page letter, the respondent has a three-page response, and then if the parties aren't able to reach an agreement, the letters are submitted to the court. Judge Marrero's rules provide that he will then have a pre-motion hearing to discuss the arguments and then give preliminary guidance after which the parties can proceed in light of his guidance. When you say the parties proceed, the parties proceed to file a formal motion? Correct, if that's the route that the parties want to go after hearing Judge Marrero's preliminary guidance. But that didn't happen here. No, that did not happen here, Your Honor. To our surprise, we were expecting to have a pre-conference, a pre-motion teleconference with the court. We just received an order dismissing our case saying that the three-letter motion was deemed to be a motion to dismiss. Would you want us simply to return it to the district court so that you can have a real, you should quote, a real, close quote, motion to dismiss? Well, Your Honor, I think that that would be appropriate, although I'm not sure that's the most efficient way to handle this at this point. The parties have gone through a great deal of briefing of this, and Your Honors have all taken time to look at this. And I think some of these are pretty clear issues that can be decided by the court based on the record before it. Although there are some other issues that would require some, you know, for example, the potential to amend is not available at this court. We'd have to get a remand for that. As another preliminary matter, we have two appeals docketed, 21-826 and 21-827. I was a little confused about the status of the copyright case, which he denied summary judgment on and directed the parties to prepare for trial. But that was, you know, over a year ago. Is that going forward or is that stalled? You know, we're just looking at the Lanham Act appeal, aren't we? Yes, we're just looking at the Lanham Act appeal here. The district judge has stayed the copyright case pending a decision from this court based on, I think, our belief and the court's belief that it would make sense to try both these cases at once if both cases do indeed go forward. Okay, so the copyright case has just stayed pending decision on this, on the Lanham Act? That's correct, Your Honor. Okay, thank you. So, as I was saying, the heart of UpCode's advertising campaign was a promise to engineers that its building codes were always up to date and included all local amendments. Those claims were false and UpCode knew it. These weren't harmless white lies. Buildings that cost millions of dollars are designed based on these codes, and the failure to comply with them threatens public safety. As a result, ICC, a nonprofit whose sole mission is to improve building safety, brought this case to redress UpCode's false advertising. I'd like to focus on three key errors that the district court made in this pre-letter motion decision. First, the finding that the always-up-to-date claims were puffery. Second, the finding that UpCode's claims to have all amendments integrated was true, even though UpCode's admittedly only has some of the amendments integrated. And finally, the finding that UpCode's claim to be the only source of integrated codes was true, even though ICC also offers integrated codes. A ruling in favor of ICC, of course, on any of these issues would mark a reversal. I take it one of the problems here is precisely that it is on this quasi-motion to dismiss where everything you have pleaded is taken to be true, and you have to find in what you have pleaded and the other acceptable documents, you have to find the defenses which they say entitled them to a dismissal. Yeah. Your Honor, I think really that the heart of many of these problems arise from the fact that it was decided even at a pre-motion to dismiss stage, let alone at a motion to dismiss stage. The bottom line with respect to almost all… For instance, he said on the only source false claim that you had waived that, but you were expecting ultimately to file a formal motion. Of course. And so he found a waiver just out of the blue based upon your response in your letter, which you never intended to be conclusive on the motion, right? Of course, Your Honor. And I think that does distinguish it from some of the cases where this court has found conversion of pre-letter motions to be harmless errors to be distinct from this particular case where we were actually found to have waived particular arguments. With regard to the Puffrey claim, I understood the district court to be saying that no version of codes posted online is going to be instantaneously accurate. There will always be a bit of a delay because you have to get the legislative action and then it shows up on the screen, and that that's true for ICC's postings as well as for UP codes. And so he said that as a result that your product has the same flaws as the one you challenge and that the reasonable user would expect that. Why isn't that a reasonable position to take in determining whether this is Puffrey on a motion to dismiss? Sure, Your Honor. This court's precedent makes clear that determining whether or not a statement is Puffrey must be determined, taking into account how all reasonable buyers would interpret that language. And the court in this case construed the always up-to-date claims to mean that there could be no circumstances in which an amendment was up-to-date after it became effective. But let me interrupt for just a second, though. I mean, we don't let all cases involved where the court suspects Puffrey go to summary judgment. You know, cases get dismissed on a 12b6 motion for Puffrey because you look at the complaint and say, no one's going to take this seriously and think, for example, you know, the advertisement was up to three times the speed of other providers. And so that wasn't a promise of three times the speed, and that was appropriate for dismissal at a 12b6 stage. Why isn't the same true here? Sure. And thank you, Your Honor. There was no finding that the always up to three times the speed was Puffrey. There is a finding that there was no allegation it was false because the claim in that instance was up to three times the speed. And of course, up to three times the speed doesn't guarantee three times the speed. In this case, UpCodes told all of its consumers who are relying on these codes to make important business decisions and safety decisions that they were always up-to-date. And, you know, to the extent there was any ambiguity about whether that really meant always up-to-date, I would direct you to, for example, paragraph 50 of the complaint where immediately after they say they're always up-to-date, they indicate that their service permits parties to stay ahead of all the amendments and code changes. So a reasonable consumer who's reading the always up-to-date claim, followed by the statement that you will be able to stay ahead of the amendments and ahead of code changes, at least some reasonable consumers are going to understand that to mean that they could rely on UpCodes' website to have the codes that are in effect at that time. Now, Your Honor, I did also ask how is it possible to have it always up-to-date in light of there's at least one circumstance UpCodes has identified where an amendment came effective immediately. But the bottom line is there's no evidence in the record or in the complaint that all consumers would be aware that this very rare circumstance. Is that something that might be cleaned up on if this were a summary judgment rather than a directive? Of course, Your Honor. I mean, if we go through the normal process here, there will be expert testimony and discovery of how customers actually interpret these things. And then we get to figure out, do consumers really interpret the matter the way that ICC proposes or UpCodes proposes? But the district court shouldn't make that decision in the first instance on a motion to dismiss and certainly not on a pre-letter motion. This court has made it clear in, for example, the Time Warner case that the district judge's reaction to these types of statements is not determinative and sometimes is completely irrelevant. What matters is what do reasonable consumers interpret a statement to mean? And the only way to figure that out is to go through discovery process and expert testimony with surveys. Even if there's a problem with in terms of puffery with regard to always up-to-date and complete and accurate kind of things, the state, I mean, that could be more generalized in the sense of not being actionable, but it may be actionable depending on what more evidence. But it seems to me that the statements, all codes and all integrated amendments is precise and objective and capable of being determined false or not. I completely agree, Your Honor, especially in the context, which is important to consider in assessing false advertising claims. I see them well over the time that I've put for my initial round. Please take your time to answer Judge Walker's question, though. Yeah. So I would think on those instances, maybe they would be a question of whether they could be they could be false or not. And, you know, maybe dismissing them is premature. Your Honor, I mean, I think that the whole problem here is the process. You know, if, you know, after, you know, we go through discovery process, go through expert testimony and have a trial, if a jury concludes that all reasonable consumers will interpret those types of claims to be subject to some caveat or disclaimer, then that's fine. A fact finder has the right to make that decision. The problem here is that we aren't at the fact finding stage. This was not even a motion to dismiss, but a pre-motion letter upon which a very important case was decided and decided on facts that just are not appropriately decided at this stage. Very good. Well, you have two minutes of rebuttal, Mr. Fee. So we'll hear from you in a few minutes. Mr. Novikoff. Good morning, Your Honors. You got it exactly right. Thank you very much. May it please the court. I'm Gene Novikoff. I represent the Appalachian Upcodes and the Reynolds defendants. Let me start by addressing the procedural question as to which the court understandably had some questions. And the only thing that I would say about that is the concerns that this court has expressed previously with procedures like the one that Judge Marrero followed is whether or not the parties had notice and an opportunity to be heard on the issues. And here, I think there's no question that there was notice and an opportunity to be heard. ICC's argument is that they were expecting full briefing and they didn't get full briefing. Of course, the court has discretion about how much briefing it wants to allow. And I would just note Judge Marrero's procedures expressly instruct the plaintiff to respond to the pre-motion letter, quote, indicating the extent, if any, to which plaintiff concurs with defendant's objections and the amendments, if any, to be made to the complaint to address them, or else stating the reasons and controlling authority that support the pleadings as filed. Yes, but the judge doesn't also say anything that you don't say, you will not be permitted to make it, to raise at the formal motion. He doesn't, it's not a preclusive practice of his, right? That's certainly right, Your Honor, and I don't disagree that. So he's trying to see if maybe there is something, some way, probably he's trying to get at whether the complaint could be amended early so that the motion to dismiss could be on the basis of a better complaint. But this practice is, the practice is always error. The only question is, is it harmless error? But it's always error to rule, and in this particular instance, he decided the case without telling anybody that this is what you were arguing here is going to result in a decision. It came as a surprise, unless I've got it wrong. I appreciate, Your Honor, that, Your Honor, the only, the only point I was trying to make is that he, the judge does instruct the parties to make their arguments, right? In this motion briefing. Asked, asked, asked the question of harmless. I must say, the notion that the three page anything is, is equivalent to a brief. I've been a lawyer and judge for a long time I don't think I've ever seen the three page brief. Your Honor, I mean, I guess I would say that there are any number of issues on which courts allow for only abbreviated briefing. I take your serious concern with the process that was followed in this case. On the harmless error point, the only thing I would say is when courts that when this court has considered this question previously, the thing that it evaluated to decide whether or not the error was harmless is whether or not the parties had a chance to brief the issues in this court with a fully developed record. This is an emotion to dismiss. Obviously the parties went through full briefing. And so I think if that's the criterion for harmless error, then I think it would be mad and it sounds like the parties actually agree that the most efficient thing, maybe for for for the court to take a substantive look at the issues that we might say substantive issue and reversing, and then it then it moves on to the next to the next phase, which would be summary judgment. Because why wouldn't puffery at least be an open question here. Needing needing more factual context. So, here's the point that I would make on puffery. There was a lot that I heard from Mr fee and there was a lot in the briefing about different interpretations that people might take reasonable customers might take of the statements that were made about accuracy and completeness. I just want to clear the district court credited ICC interpretation of the statements as meaning that the website is going to be 100% accurate at all times and 100% up to date at all times. The district court credited that on page a 68 and found that those statements were adequately pled to be false. It then went on to answer the offer a question which is given that those statements were made and they mean that's what they mean, would a reasonable customer. Take that seriously as a promise that was going to get fulfilled right what a customer rely on those statements to navigate the marketplace. And the district court concluded that those statements crediting I theory that ICC was advancing wouldn't be taken seriously by reasonable consumers as promises and district courts do that all the time. This court has done that with respect to payments in the securities context and there was some suggestion in the reply brief that because the pleading is different the evaluation of whether or not a statement of puffery is different, and that suggestion is I think incorrect. Other courts have done it expressly as Judge Carney has noted in the false advertising context and I'd point the court to the Cook case from the Ninth Circuit for a couple of specific analogous examples from district courts. I would point your honors first to the summit technology case out of the Central District of California, where the court held at the motion to dismiss stage of the claim that a machine was perfectly reliable, close quote was puffery, and that any. The extent it was interpreted as a promise that the machine would never break that was not a promise that customers would take seriously. And in the Southern District of New York, I would point your honors to Davis versus avo there the district court took up an allegation that an online lawyer referral service engaged in false advertising because it put a little pro icon besides the names of certain lawyers, and the district court concluded that in so far, like crediting the plaintiff's interpretation that pro was a badge of quality of some sort that wouldn't get taken seriously as a promise. By a reasonable customer. How do you view the statements all codes and all integrated amendments. It seems to me, though, those are very precise and objective, and they've alleged that they're false. So there your honor, I would ask the court to take a look at the context in which those statements here, and I will get you a page site to our brief. It's page 46 of the up codes brief, and I think that if one takes a look at the context in which the statements appear agreeing with Mr fee that context is very important. I think that there is no reasonable question that what was being conveyed is that for $29 a month. What would be made available would be all codes that are that are that up codes offers right that there's no part of the up codes website that is being excluded. I don't think that what was being conveyed there was all codes that ever existed you know for all time it's not even super clear what that means that isn't that precisely a jury question. Isn't that a question about what what you meant by the terms all codes is is subject to argument and debate and context context being provided in a brief, without any facts having been introduced. Without any, without a hearing without any, any customer views or surveys of any sort or anything like that seems to be premature. You know, design that I appreciate that your honor so so here, I would suggest that taking a look at the context which I think is incorporated by reference that at a minimum, the court can certainly look at the full web page on which that statement appears, and I would suggest that looking at that makes it clear that that statement doesn't mean all codes ever for all time. The analogy that I would draw here is the Frito-Lay case which is cited on page nine of ICC's reply talks for example about the Fruit Loops false advertising case where the district court was able to take a look at the cereal box and conclude that a reasonable customer would not conclude that the cereal contains fruit in it. And I think that with respect to all codes, as it appears on that web page. This case is similar. The other one only integrated amendments. Well, so not all the men I am integrated at least according to the complaint.  I guess there's only one statement in which up codes said that and it was in a tweet that codes is a place where all the codes are kept up to date with all the amendments integrated natively into the code. I don't think that that is correctly interpreted to be a guarantee that everything is going to be instantaneously updated and up to date at all times. Right. And then that's ultimately the conclusion that the district court drew. And I think I'm out of time. So if there's anything I'll leave it there. Thank you very much. I think we have your argument. We'll hear rebuttal. Mr. Fee, you have two minutes. Thank you, Your Honor. You know, I think the one thing that might be helpful to talk about here on rebuttal is to put some of the cases that my opponent cited in context where courts have decided things weren't puffery as a matter of law. I think it's important to remember that there are three different types of puffery that this court has identified. One is subjective claims about products that can't be proven true or false. That that is not what applies. Is it an issue here? A second type is statements of opinion. Again, that's not an issue. The type of puffery we're talking about here are statements that are so exaggerated that no reasonable consumer would be justified in relying upon them. The cases that our opponent cites almost always deal with either statements of opinion or aspirational statements or statements that are just not capable of being true or proven true or false because they are like in the Gatorade case, you know, the complete sports drink. Well, what is a complete sports drink? You can't prove that's true or false. Here, there's no dispute that the statements that issue can be proven true or false. And the only issue is whether or not any reasonable consumer would rely upon those issues. And that's precisely the type of factual determination that should never be made on a motion to dismiss, barring truly unusual circumstances. There's at least a bona fide argument to be made that some consumers will take the statements that UpCodes made for what they say, as they would be interpreted in the ordinary course of the English language. And there's no basis for the district judge on a three-page letter motion making the factual determination that no reasonable buyer could rely on any of these statements, particularly in light of the context where UpCodes repeatedly makes the point that their customers, if they purchase the services, will never work from outdated codes, will be able to stay ahead of all amendments and code changes. Under those circumstances, I respectfully submit it was inappropriate for the district court to convert this motion or convert this letter into a motion to dismiss and to grant it, and we respectfully request this court reverse that decision. Thank you very much. Thank you both for your arguments. We'll reserve decision. Thank you, Your Honor. Thank you.